SAMUEL AYER *versus* BAILEY BARTLETT, Sheriff, &c.

Where the owner of real and personal estate gave a bond with condition that he would convey the same to the obligee, when certain negotiable notes given for the consideration should be paid, and that the obligee should have the possession and enjoyment of the property so long as he should continue to pay the notes as they became due and no longer, and possession was delivered immediately, pursuant to the bond, it was held that the transaction was not fraudulent *per se* as against the creditors of the obligee.

Such possession and use, though they might induce persons to trust the obligee under the belief that he was the owner of the property, yet, if not permitted with a fraudulent design to obtain credit for him, would not render the property liable for his debts.

TROVER for machinery, goods and chattels. Trial before *Putnam* J.

It was admitted that the plaintiff was once the owner of the property. Moody Bridges, a deputy of the defendant, and for whose alleged default this action was brought, attached it on several writs as the property of William Scholfield, and the defendant contended that the plaintiff had sold and disposed of it in such manner as to render it liable to Scolfield's creditors.

It was proved that the machinery belonged to a cotton factory in Andover, and that the plaintiff gave Scholfield possession of the real estate or factory by turf, &c. and permitted him to enter and have the actual possession of the machinery, &c. Scholfield then made such alterations as his convenience required, put up new lathes instead of the old ones, and made alterations in the looms, and in other respects managed as if he had been the owner of the property. He sold some of it, and received the payment for it.

Evidence was produced of declarations of the plaintiff to different witnesses, at different times, that he had sold the factory, machinery, &c. to Scholfield. These declarations were objected to on the part of the plaintiff as incompetent evidence, but were admitted; and his counsel then undertook to explain them in this way, *viz.* that there had not been an actual sale, but an agreement for a sale, accompanied indeed with immediate possession, but without any change

72

of property. And they · proved by Hobart Clark, Esq., that the plaintiff and Scholfield together consulted him, and finally agreed that the plaintiff should give a bond to Scholfield to convey the factory, &c. A bond was accordingly given, dated August 13, 1824, by the plaintiff as principal and one Adams as surety, in the penal sum of 18,000 dollars. The condition was, that whereas Ayer " has agreed to sell and convey " to Scholfield, a woollen factory, &c. for the sum of 9000 dollars, to be paid by instalments, the first of which was payable on the 1st of February, 1825, and the last on the first of April, 1828, with interest to be paid annually, according to the tenor of certain negotiable promissory notes given by Scolfield to Ayer, of even date with the bond ; " and whereas it is agreed that the said Scholfield shall enter, improve and occupy the said real estate with all the machinery and other property belonging to the factory, dye-house, and gristmill, &c. and have quiet possession and enjoyment thereof so long as he shall continue to pay his said promissory notes as the payments become due, and no longer ; — now if the said Ayer, &c. shall permit and suffer the said Scholfield, &c peaceably and quietly to enter, improve, occupy and enjoy all the estate and property above mentioned, according to the terms and conditions aforesaid, without any manner of let, suit, trouble, &c. and if the said Ayer, &c. shall make, execute and deliver to said Scholfield, &c. a good warrantee deed of all the aforementioned estate and property, free and clear from all incumbrances, so soon as can be accomplished after all the aforesaid notes are paid, then this obligation to be void," &c. It was then argued by the plaintiff's counsel, that after the agreement had been executed and possession had been given in virtue of its provisions and conditions, it was in a popular sense true, that the plaintiff had sold out the factory, &c. to Scholfield, and it could not be expected that the plaintiff would have told the great number of people to whom he mentioned the sale, the particular terms and conditions attending the same.

The counsel for the plaintiff offered to inquire of a witness, whether it was not understood in the neighbourhood that the plaintiff had given only a bond, and not an actual conveyance

of the property. This was objected to and not permitted. But the plaintiff was permitted to prove, if he could, that any of the attaching creditors knew the situation of the property ; and evidence was introduced tending to show that Bridges, the deputy sheriff, and some of the creditors, were acquainted, before the suits were commenced, with the terms of the contract beween the plaintiff and Scholfield.

It was contended on the part of the defendant, that the plaintiff was estopped, in regard to the attaching creditors, from saying that he had not sold the property, or that it was not Scholfield's.

The jury were instructed, among other things, that if, from the evidence, they were satisfied that the plaintiff had delivered the goods to Scholfield, and permitted him to have them in such manner as induced the attaching creditors to give him a false credit, and that they trusted him upon the belief which the plaintiff had caused them to have, that the machinery at the factory belonged to Scholfield, their verdict should be for the defendant, notwithstanding, as between the plaintiff and Scholfield, the latter (not having performed the conditions) could not have compelled the former to execute a conveyance according to the bond ; — that if the attaching creditors knew the situation of the property, and that only a bond for a conveyance, and not an actual conveyance, had been given, they could not recover on the ground of the plaintiff's having permitted Scholfield to have the possession of the property, and if the jury should be of opinion that the creditors had such knowledge, their verdict should be for the plaintiff, unless they were satisfied that the bond and agreement were not *bonâ fide*, but made with intent to defraud creditors ; — and that as to those persons who trusted, knowing the situation of the property, no false credit could be said to have been held out.

The jury found a verdict for the plaintiff for 18 dollars damages for one article, which had been only lent to Scholfield, but in regard to all the other articles mentioned in the writ they found the defendant not guilty. The plaintiff moved for a new trial.

**74**

*Pickering* and *Saltonstall*, in support of the motion, said there was no evidence that the plaintiff told any creditor of

Scholfield, that he had sold the chattels in controversy, or that any person to whom he made such a declaration had repeated it to a creditor, so that if any fa se credit was given, it must have been from general reputation that Scholfield owned the property ; the evidence, therefore, which was offered, to show that it was generally understood that the sale was not to be completed until after the performance of a condition, ought to have been admitted, to rebut the presumption that the creditors had been deceived. Scholfield's possession and ap parent ownership were consistent with the written contract, and the declarations of the plaintiff were capable of explanation ; and although Scholfield had the chattels in such a manner as induced persons to give him a false credit, yet if the plaintiff did not permit it with a fraudulent design, the proper ty was not liable for Scholfield's debts. 2 Stark. Ev. 181 ; 1 Barn. & Ald. 335 ; *Lingard* v. *Messiter*, 1 Barn. & Cressw. 308 ; *Lingham* v. *Biggs*, 1 Bos. & Pul. 88 ; *Walker* v. *Burnell*, 1 Doug. 317 ; *Edwards* v. *Harben*, 2 T. R. 596 ; *Badlam* v. *Tucker*, 1 Pick. 398 ; *Bartlett* v. *Williams*, ibid. 288 ; *Barrett* v. *Pritchard*, 2 Pick. 512 ; *Marston* v. *Baldwin*, 17 Mass. R. 606 ; *Palmer* v. *Hand*, 13 Johns. R. 434 ; *Dawson* v. *Wood*, 3 Taunt. 256 ; 2 Kent's Comm. 410 ; *Meggott* v. *Mills*, 1 Ld. Raym. 286 ; *Leonard* v. *Baker*, 1 Maule & Selw. 251.

*Cummins* and *Spaulding, contrà,* contended that a contract respecting personal property like the one attempted to be set up, could not be supported by law ; that it would lock up the property for four years from the creditors both of the plaintiff and Scholfield, and must be considered fraudulent as against the creditors of Scholfield. But even if there was no fraud on the part of the plaintiff, yet as he had said that the property was Scholfield's, and had permitted him to treat it as such, he was estopped to deny that Scholfield was the absolute owner. Nearly all the debts of the attaching creditors were contracted after Scholfield came into possession of the property. 2 Stark. Ev. 28, 32 ; *Davis* v. *Spooner*, 3 Pick. 288 ; *Aveson* v. *Kinnaird*, 6 East, 188 ; *Milford* v. *Bellingham*, 16 Mass. R. 109 ; *Lingham* v. *Biggs*, 1 Bos. & Pul. 87 ; *Darby* v. *Smith*, 8 T. R. 82 ; 1 Pick. 295, 388 ; Rob. Fr.

Conv. 547 ; *Worseley* v. *De Mattos*, 1 Burr. 467 ; *Gale* v. *Ward*, 14 Mass. R. 352 ; *Hussey* v. *Thornton*, 4 Mass. R. 407.

The opinion of the Court was drawn up by

PARKER C. J. The property which is the subject of this suit, it is agreed, once belonged to the plaintiff ; but it is supposed by the defendant, that it was either transferred by him to Scholfield the debtor, or that it was permitted by the plaintiff to be so used and possessed by Scholfield as to give his creditors the right to attach and hold it to satisfy their debts.

There is no evidence of any actual sale to Scholfield, but there was an agreement to sell, the consideration was fixed, and negotiable notes payable at future periods were given by Scholfield to the plaintiff, and Scholfield was put into possession of the whole subject of the contract, real estate and machinery, and used them as his own. The terms of the contract are expressed in the bond given by the plaintiff to Scholfield.

It is very clear that this transaction did not amount to a transfer of the property to Scholfield. It was merely a contract to sell and convey, and the title as between the two parties was retained in the plaintiff, and intended to be so, until the conditions should be performed by Scholfield.

This species of contract was probably chosen by the plaintiff as giving him the greatest security for the payment of the consideration, though without doubt a conveyance from him, with a mortgage from Scholfield, as real estate was the principal subject, and the machinery might well have been so secured, would have been more free from difficulty.

Had the bargain been completed by a conveyance and mortgage, it cannot be doubted that the plaintiff would have had a lien upon all the property, until all the consideration was paid. The creditors of Scholfield might then have resorted to the equity of redemption, and the rights of all would have been taken care of to the extent of the value of the property.

In the mode adopted the creditors are put to great disadvantage, there being no title in Scholfield of which they can

avail themselves at law, even if the greater part of the consideration should have been paid by him. This renders such contracts objects of jealousy, and they certainly ought to be critically scrutinized, for they afford a most convenient screen for fraud between the parties to the bargain. But they are not *per se* fraudulent. We have been accustomed to seeing bonds for the conveyance of real estate, the obligee giving notes for the consideration, he entering into possession and occupying the land, making payments from time to time, and yet gaining no title to the land. These bargains have been upholden at law, and chancery has power over them to compel an execution of the contract. *Proprietors of No. Six* v. *M'Farland*, 12 Mass. R. 327. It is likely that creditors may step in and avail themselves of chancery jurisdiction, upon offering to complete the payments, and obtain a conveyance of the land to them. And perhaps in the case before us, if the plaintiff shall have received so much of the consideration as shall leave a valuable property to Scholfield, his creditors may avail themselves of it through the power of a court of chancery ; but certainly not without paying the sum that is due to the plaintiff. We have spoken only of the nature of the contract, to show, that though inconvenient and embarrassing, it is not necessarily fraudulent.

The action seems to have proceeded on the ground, that although there was not in fact or intention, any actual sale or transfer to Scholfield, yet that his possession and use of the property being such as to lead those who would trust him, to believe that he was the owner, it became liable for his debts.

No such principle has been adopted in our law, nor in the English except under the *St.* 21 *Jac. c.* 19, supplemental to the general bankrupt laws, and intended to give force and vigor to them. The provision is, that any goods &c. in the possession of the bankrupt, at the time of the act of bankruptcy, of which the order and disposition shall be in him, shall pass to the assignees as his property. This is a special provision making property admitted to belong to others, liable to the bankrupt's debts. It was enacted to avoid the litigation respecting property in possession of bankrupts, claimed by others under the common law principles, which were fre-

quently abused. The same principle was contained in the bankrupt law of the United States which once existed. It was a harsh principle, but became innoxious when known to be the law, for people would be careful of so intrusting their property as to expose it.

Ayer<br>*v.*<br>Bartlett.

It is only under the statute, and in case of bankruptcy, that the mere possession of another man's goods subjects them to seizure for his debts ; and there is no principle of the common law, which will warrant it. If I lend my horse or other chattel to another to use as his own, neither he nor his creditors have a right to divest me of the property. Or if I should furnish the house of a friend for his convenience, with furniture purchased by myself, he never having had any property therein, his creditors could not take it from me, although from the use of it they supposed it belonged to him. Even where possession is considered as conclusive evidence of property, it is only where the person in possession had once been the owner. It is true that such acts are of a suspicious nature, and the possession and use may be strong evidence of property, but still it is only evidence, and the effect of it may be overcome by clear and decisive evidence of property in another.

It seems to us, that that part of the instruction to the jury, which authorized them to find for the defendant, "if they were satisfied that the plaintiff had delivered the goods to Scholfield and permitted him to have them in such manner as induced the attaching creditors to give a false credit to Scholfield, and that they trusted him upon the belief which the plaintiff had caused them to have, that the machinery at the factory belonged to Scholfield," was incorrect. If he did this with a fraudulent design to obtain credit for him, without doubt the creditors would hold the property ; but if he did nothing more than endeavour to keep the security in his own hands, he ought not to be prejudiced, although the creditors of Scholfield may have been deceived by the circumstances.

**78**

It appears to us therefore, that the true question in this cause is, whether the transactions between the plaintiff and Scholfield were *bonâ fide* or fraudulent. If there was in fact a sale, and the bond, instead of a transfer, was given to con-

**7 \***

ceal the property from Scholfield's creditors, of course the attachment would hold : or if there was a design on the part of the plaintiff to make the property appear to belong to Scholfield, in order that he might obtain credit upon it — if his declarations were made with that view. But if he has conducted honestly in taking care of himself, and the declarations imputed to him were not fraudulently made, but were such as are natural and common to those who have agreed to sell, but have not actually legally transferred, all may be consistent with the nature of the original contract, and so not fraudulent or void.

The case chiefly relied on to support the defence, and which was particularly adverted to by the judge as the ground of his charge to the jury, is *Hussey et al.* v. *Thornton*, 4 Mass. R. 405. This case, so far as any thing was decided by the Court, determines that a conditional sale, accompanied by a delivery, does not transfer the property so as to make it liable to attachment by the creditors of the vendee, provided the delivery were conditional as well as the sale. Thus far it supports the view we have taken of the present case. But in concluding the opinion of the Court, the chief justice said, " Had the demands of these creditors originated while the goods were in the possession of Todd and Worthley (the vendees) so that it might be fairly presumed that a false credit was given to them, or had Todd and Worthley sold them *bonâ fide* for a valuable consideration, our opinion would have been otherwise." It is this expression which was relied upon at the trial. It cannot be said to be a decision, because it was upon a supposititious case. If such case had in fact been before the Court, the arguments of counsel and authorities might have produced a different opinion. It no doubt was founded upon a recollection of the statute of James, which has been mentioned. It certainly is not true as a general proposition ; for it would contradict a series of determinations, that possession merely of a vendee may be explained.[1] Many instances will suggest themselves, where the possession of one man of the goods of another, is perfectly consistent with good

---

[1] See *Wheeler* v. *Train*, 3 Pick. (2nd ed.) 257, note 1.

faith, and with the right of property in the vendor, and it was for this reason that the statute of James, in aid of the bankrupt laws, was passed. A case in 3 T. R. 322, (*Collins* v. *Forbes*,) clearly illustrates the purposes and objects, and the true construction of that statute.

If the transaction is fraudulent, the vendor setting up a condition to the sale, yet suffering the vendee to be in possession exercising full rights over the property, with the intent and purpose of enabling him to obtain credit on the strength of the property, he will not be able to avail himself of such condition, but the sale will be held to be absolute in regard to the creditors. But if *bonâ fide*, and the object of the condition was merely security to the vendor, he shall not lose his property because some creditor of the vendee supposed it belonged to *him*.[2]

It is because the judge instructed the jury, that such possession in Scholfield, permitted by the plaintiff, as would induce the creditors of Scholfield to trust him on the strength of this property, would justify a verdict for the defendant, that we think there ought to be a new trial. Possibly it may be unavailing to the plaintiff, for if there was an absolute sale and only a pretended condition, or if there was an intention and design, on the part of the plaintiff, to enable Scholfield to get credit on this property, he will have no right to recover.

*New trial granted.*

---

[2] See *Blood* v. *Palmer*, 3 Fairfield, 414; *Ayer* v. *Bartlett*, 9 Pick. 159; *Reed* v. *Upton*, 10 Pick. 522; *Whitwell* v. *Vincent*, 4 Pick. (2d ed.) 452, note 1; 2 Kent's Comm. (3d ed.) 497; *Meldrum* v. *Snow*, 9 Pick. 441; *Sawyer* v. *Shaw*, 9 Greenl. 47.